UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ASHLEY BUDER JONES,

       *Plaintiff*,

    -against-

EQUIFAX INFORMATION SERVICES LLC,
and CORELOGIC CREDCO, LLC,

       *Defendants.*

**COMPLAINT**

**JURY TRIAL DEMANDED**

   By and through the undersigned counsel, Plaintiff Ashley Buder Jones ("Plaintiff"), with knowledge as to her own acts and investigation of counsel as to the acts of others, and believing that further investigation and discovery will confirm that such allegations have substantial evidentiary support, alleges as follows:

### Preliminary Statement

1. Pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), and the New York Fair Credit Reporting Act, NY General Business Law § 380 et seq. ("NY FCRA"), Plaintiff brings this action against Defendants Equifax Information Services LLC ("Equifax") and CoreLogic Credco, LLC ("CoreLogic"; together, Equifax and Synchrony are "Defendants") to recover actual, statutory, and punitive damages, as well as costs and attorney's fees and injunctive relief.

2. Congress enshrined within the FCRA the "need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." § 1681(a)(4).

3. Moreover, Congress has plainly stated the purpose of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of

commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information . . . ." § 1681(b).

4.   Similarly, courts have stated that the purpose of the FCRA is to address the "serious problem in the credit reporting industry. . . of inaccurate or misleading information." *Kilpakis v. JPMorgan Chase Fin. Co., LLC*, 229 F. Supp. 3d 133, 142 (E.D.N.Y. 2017) (internal quotation marks and emphasis omitted); *see also, e.g., Porter v. Talbot Perkins Children's Servs.*, 355 F. Supp. 174, 176 (S.D.N.Y. 1973) (noting that "[t]he purpose of the Fair Credit Reporting Act is to protect an individual from inaccurate or arbitrary information about [that individual from appearing] in a consumer report . . . ") (citing 116 Cong. Rec. 36572 (1970)).

5.   As set forth herein, Defendants denied Plaintiff the protections provided by the FCRA.

6.   Specifically, Equifax and CoreLogic each violated 15 U.S.C. § 1681e(b) by their respective unlawful conduct, acts, and omissions. Equifax and CoreLogic each prepared and published consumer reports about Plaintiff to third-parties that were replete with inaccurate information. Indeed, upon information and belief, the consumer reports that each Defendant prepared and sold about Plaintiff included approximately 30 items of personal information, account tradelines, and hard inquiries that are, in reality, attributable to one or more consumers other than Plaintiff ("Mixed File Information"). Those inaccuracies were caused by the respective failures of Equifax and CoreLogic to follow reasonable procedures to assure maximum possible accuracy of information concerning Plaintiff in consumer reports that Defendants published about Plaintiff.

7.      In addition, Equifax and CoreLogic are liable to Plaintiff for their respective violations of
        NY FCRA § 380-j because each Defendant (a) reported about Plaintiff, or maintained in
        its credit file about Plaintiff, personal and account information that Equifax had reason to
        know was inaccurate, and (b) failed to maintain reasonable procedures designed to assure
        maximum possible accuracy of information reported about Plaintiff.

8.      The amount of inaccurate personal information and account data that each Defendant
        reported to third parties and maintained in Plaintiff's credit file is staggering. Given the
        volume of Mixed File Information, the only reasonable conclusion is that Defendants'
        respective violations of  FCRA § 1681e(b) and NY FCRA § 380-j were willful (i.e.,
        knowing or reckless).

9.      Equifax is also liable to Plaintiff for violations of several provisions of § 1681i of the
        FCRA (and § 380-f the NY FCRA) due to its acts and omissions, including, but not
        limited to, the following:

        a.  failing to (i) conduct a reasonable reinvestigation of disputed personal information
            and hard inquiries ("disputed information") to determine whether that disputed
            information was not accurately reporting, and (ii) record the correct status of the
            disputed information, in violation of § 1681i(a)(1);

        b.  failing to review and consider all relevant information communicated by Plaintiff
            concerning the disputed information, in violation of § 1681i(a)(4); and

        c.  failing to promptly delete the disputed information from Plaintiff's credit file
            despite the fact that Equifax could not affirmatively verify the disputed
            information as belonging to Plaintiff upon a lawful reinvestigation of Plaintiff's
            dispute, in violation of § 1681i(a)(5).

10. Furthermore, as described herein, Equifax also is liable to Plaintiff for violations of other sections of the FCRA, including §§ 1681b and 1681g.

11. As a direct and proximate result of each Defendant's unlawful conduct, Plaintiff suffered actual damages cognizable pursuant to the FCRA and NY FCRA.

12. Each Defendant's willful violations of the FCRA and NY FCRA entitles Plaintiff to an award of punitive damages.

## **Jurisdiction and Venue**

13. The jurisdiction of this Court is conferred by 15 U.S.C. § 1681(p). This Court has supplemental jurisdiction of state claims asserted herein under New York law pursuant to 28 U.S.C. §1367(a).

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

## **The Parties**

15. Plaintiff Ashley Buder Jones is an individual and "consumer" within the meaning of the FCRA (15 U.S.C. § 1681a(c)) and NY FCRA (NY GBL § 380-a(b)). Plaintiff resides at 520 East 12th Street Apt 3D, New York, NY 10009-3833.

16. Defendant Equifax is a Georgia limited liability company that conduct business in the State of New York and is a "consumer reporting agency" ("CRA") within the meaning of the FCRA (15 U.S.C. § 1681a(f)) and the NY FCRA (G.B.L. § 380-a(e)).

17. Defendant CoreLogic, is a Delaware limited liability company that conducts business in the State of New York and is a "consumer reporting agency" ("CRA") within the meaning of the FCRA (15 U.S.C. § 1681a(f)) and the NY FCRA (G.B.L. § 380-a(e)).

## Statement of Facts

### *At its core, this is a mixed file case*

18.     Among the trove of Mixed File Information that Plaintiff discovered on her Equifax
credit report were approximately (a) twenty-one inaccurate tradelines, (b) three
inaccurate hard inquiries, (c) three inaccurate names, (d) two inaccurate addresses, (e)
one inaccurate telephone number, and (f) an inaccurate date of birth. Plaintiff also did not
recognize soft inquiries from seven entities. She suspects those inquiries may be
attributable to one or more other consumers.  Plaintiff's CoreLogic credit report included,
and her CoreLogic credit file may still include, virtually the same inaccurate information
as Equifax reported and/or continues to report.

19.     With respect to Defendant Equifax, Plaintiff (a) disputed all Mixed File Information, and
(b) asked Equifax to (i) investigate soft inquiries that Plaintiff did not recognize, and (ii)
delete from her credit file all such inquiries that Equifax could not verify as attributable
to Plaintiff.

20.     Due to Equifax's failure to perform the FCRA-required reasonable reinvestigation of all
aspects of Plaintiff's dispute, Equifax continued to unlawfully report and maintain in its
credit file for Plaintiff certain items of disputed Mixed File Information.

### *Equifax's Long History of Mixing Consumer Files*

21.     Equifax has a long history of harming consumers like Plaintiff by reporting Mixed File
Information.

22.     On March 8, 2015, New York Attorney General Eric Schneiderman settled claims with
Equifax, Experian, and Trans Union concerning mixed files ("New York enforcement
action"). *See In the Matter of Eric T. Schneiderman, Attorney General of the State of New*

*York v. Experian Information Solutions, Inc.; Equifax Information Services, LLC; and TransUnion LLC.* Among other things, the settlement agreement with New York Attorney General Schneiderman required Equifax and the other CRAs to implement "[e]scalated [d]ispute [h]andling for Mixed Files."[1]

23.    Also in 2015, following a thirty-one state investigation of the credit reporting practices of CRAs Equifax, Experian, and Trans Union initiated by Ohio Attorney General Mike DeWine in 2012, including the incidence of mixed files, the three CRAs agreed, among other things, to pay a $6,000,000.00 settlement.[2]  Pursuant to that settlement – as in the earlier settlement of the New York enforcement action – the three CRAs promised "to implement an escalated process for handling complicated disputes – such as those involving . . . mixed files — where one consumer's information is mixed with another's."[3]

24.    On October 19, 2016, Mississippi Attorney General Jim Hood announced that Equifax, along with Experian and Trans Union, agreed to a settlement that, among other things, required the three CRAs to (a) "escalate mixed file disputes to specialized agents with

---

[1] https://ag.ny.gov/pdfs/CRA%20Agreement%20Fully%20Executed%203.8.15.pdf, at page 22; last accessed December 23, 2019; see also https://superiortradelines.com/wp-content/uploads/2015/05/Press-Release.pdf; last accessed December 23, 2019.

[2] https://www.texasattorneygeneral.gov/news/releases/attorney-general-paxton-announces-6-million-settlement-credit-reporting-agencies; last accessed December 23, 2019; *see also* https://www.reuters.com/article/us-consumers-credit-settlement/multi-state-accord-to-aid-consumers-with-credit-report-errors-idUSKBN0O52JH20150520; last accessed January 23, 2020 ("The three major U.S. consumer credit reporting agencies have agreed to improve their approach to fixing mistakes on consumers' reports . . . Equifax, Experian and TransUnion, which have credit data for more than 200 million Americans, will also pay $6 million to the states . . . expand[ing] on their March 9 agreement with New York Attorney General Eric Schneiderman to improve how they interact with consumers.")

[3] *Id.*

substantial experience processing this type of dispute,"[4] and (b) pay the state of

Mississippi more than seven million dollars.[5]

25.     Thus, long before Equifax mixed information in Plaintiff's credit file with information

from credit files of one or more other consumers, Equifax was well aware that both the

Federal Trade Commission and attorneys general of various states, *including New York*,

had deemed the mixed file issue important enough to bring enforcement actions

concerning or related to mixed files.[6]

26.     Equifax has been sued a vast number of times in the past ten years in cases that included

an allegation that it mixed the credit files of two or more consumers.[7] Moreover, upon

information and belief, the number of mixed file disputes and complaints to and/or

against Equifax that have not resulted in litigation dwarfs the number of cases that were

---

[4] http://www.ago.state.ms.us/wp-content/uploads/2016/10/CREDIT-REPORTING-REFORM-BENEFITS-MISSISSIPPIANS.pdf; last accessed December 23, 2019.

[5] http://www.ago.state.ms.us/releases/attorney-general-jim-hood-announces-that-experian-transunion-and-equifax-will-overhaul-credit-reporting-practices-and-end-deceptive-marketing-in-mississippi/; last accessed December 23, 2019.

[6] Although CoreLogic is a smaller Consumer Reporting Agency than behemoth CRA Equifax and, as such, has not been the focus of the myriad of enforcement actions and investigations to which Equifax has been subjected, CoreLogic is no stranger to the problem of mixed files.

[7] Private FCRA lawsuits have resulted in multi-million dollar verdicts for consumers with mixed files. For example, in 2002, the jury in *Judy Thomas v. Trans Union LLC,* District of Oregon, Case No. 00-1150-JE, found Trans Union had willfully violated the FCRA by mixing Judy Thomas with another consumer in a mixed file case. The jury awarded Ms. Thomas $5 million in punitive damages and $300,000 in actual damages. In 2007, the jury in *Angela Williams v. Equifax Information Services, LLC,* Circuit Court for Orange County Florida, Case No. 48-2003-CA-9035-0, awarded Angela Williams $2.7 million in punitive damages and $219,000 in actual damages for willfully violating the FCRA by mixing Angela Williams with another consumer. Despite the verdict, Equifax continues to mix consumers' files. In 2013, the jury in *Julie Miller v. Equifax Information Services, LLC*, District of Oregon, Case No. 3:11-cv-01231-BR, awarded Julie Miller $18.4 million in punitive damages and $180,000 in actual damages in a mixed file case. More recently, a jury assessed a $60 million verdict against Trans Union for mixing innocent persons as terrorists and drug dealers by matching consumers with the Office of Foreign Asset Control list based on first and last name alone. *See Ramirez v. TransUnion LLC, Case No. 3:12-cv- 00632* (N.D. Cal.) Despite these and other, similar verdicts (of which Equifax and CoreLogic doubtlessly are aware), both Defendants continue to mix consumer files.

actually filed.  In addition, as Plaintiff sets forth in Footnote 6 above, the mixed file problem is something with which CoreLogic is also familiar.

27.    Nevertheless, as the evidence in this action will show, Equifax and CoreLogic continue to choose profits over taking the steps necessary to implement and/or follow procedures necessary to prevent mixed file problems.

### Plaintiff's discovery of Mixed File Information

28.    In approximately May 2019, Plaintiff was informed by utility company Con Edison that, according to Equifax, the social security number she provided to Con Edison failed to match the age that Equifax was reporting for her. As such, Plaintiff suspected that there may be significant problems on her Equifax credit file.  That suspicion caused Plaintiff to suffer substantial stress and anxiety.

29.    Determined to learn about and correct all errors in her Equifax credit file, Plaintiff made multiple requests to Equifax to obtain her credit report.  Through much of the summer, however, Equifax did not provide Plaintiff with a copy of her report.  Plaintiff's inability to obtain her report meant that she could not even begin to address problems in her credit file.  Accordingly, Equifax's failure to provide Plaintiff with her credit report greatly magnified her emotional distress.

30.    When Plaintiff finally obtained a credit report from Equifax, dated August 24, 2019, she immediately recognized that the report contained vast quantities of Mixed File Information.

31.    Plaintiff is also aware that a consumer report published by CoreLogic on or about August 20, 2019 ("CoreLogic Report") included nearly all of the same Mixed File Information that she identified on her August 24, 2019 Equifax credit report.  The CoreLogic Report

was a tri-merge report (meaning that it included information about Plaintiff that had been reported by Equifax, Experian, and Trans Union).

32.     It is evident from the face of the CoreLogic Report that (a) information CoreLogic reported about Plaintiff on the Equifax portion of that tri-merge consumer report differed drastically from the portions of the CoreLogic Report that contained information reported by Experian and Trans Union, and (b) the portions of the CoreLogic Report with information reported by Experian and Trans Union were highly consistent with one another.  As such, had CoreLogic followed reasonable procedures to assure maximum possible accuracy of information it maintained and/or reported about Plaintiff, CoreLogic would have known that the consumer report it issued about Plaintiff included a massive amount of Mixed File Information.

***Plaintiff's September 27, 2019 dispute letter to Equifax***

33.     By letter dated September 27, 2019 ("dispute letter") Plaintiff (a) disputed to Equifax all inaccurate (i) account tradelines, (ii) hard inquiries, and (iii) personal information, and (b) identified soft inquiries that Plaintiff did not recognize and believes are attributable to one or more other consumers.  In total, Plaintiff disputed twenty-one tradelines, two names, two addresses, three hard inquiries, one date of birth, and one phone number. Plaintiff also identified soft inquiries from seven entities that she did not recognize and which she did not believe belonged on her credit report.  With respect to those inquiries, Plaintiff asked Equifax to investigate and delete all inquiries that it could not verify were made to obtain consumer reports about Plaintiff.

***October 31, 2019 Equifax dispute results and credit report***

34.     In response to Plaintiff's dispute letter, Equifax sent Plaintiff dispute results accompanied

by a credit report on October 31, 2019 ("Dispute Results").  According to the Dispute Results:

    a.   Equifax continued to report inaccurate names Cecilia Reyes and Anai C Reyes;

    b.   Equifax continued to report inaccurate addresses at 630 AVENIDA DE LA PLATA, NEWBURY PARK, CA 91320 and 1611 AMADOR LN, NEWBURY PARK, CA 91320;

    c.   Equifax continued to report inaccurate hard inquiries for DIRECTV and CAPITAL ONE; and Equifax continued to report inaccurate telephone number (805) 498-9136.

35.    On the Dispute Results, Equifax also continued to report soft inquires for each of the seven entities that Plaintiff identified in the dispute letter.

***Violations of 15 U.S.C. § 1681e(b) and NY FCRA § 380-j by Equifax and CoreLogic***

36.    Equifax and CoreLogic each violated FCRA § 1681e(b), which, in pertinent part, provides: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  Liability under § 1681e(b) arises when a CRA prepares consumer reports without maintaining and following reasonable procedures to assure maximum possible accuracy of those reports.

37.    Similarly, Equifax and CoreLogic violated NY FCRA § 380-j.  Like FCRA § 1681e(b), NY FCRA § 380-j(e) requires CRAs to "maintain reasonable procedures designed to assure maximum possible accuracy of the information concerning the individual about whom [a consumer] report relates."  However, *unlike* FCRA § 1681e(b), liability also under NY FCRA § 380-j arises regardless of whether a CRA prepares a consumer report

where, as here, a CRA maintains in its credit file information which it has reason to know is inaccurate.  NY FCRA § 380-j(a)(3) ("No consumer reporting agency shall report *or maintain* in the file on a consumer, information . . . which it has reason to know is inaccurate") (emphasis added).

38.     Had Defendants maintained and/or followed reasonable procedures to assure the maximum possible accuracy of consumer reports that they prepared about Plaintiff (and information maintained in her file), no consumer report would have included Mixed File Information. Because Equifax and CoreLogic each failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of consumer reports about Plaintiff, however, each Defendant (a) maintained in its credit file for Plaintiff, and (b) issued consumer reports about Plaintiff that included substantial Mixed File Information. As such, Equifax and CoreLogic are each liable to Plaintiff for their respective violations of FCRA § 1681e(b) and § 380-j of the NY FCRA.

### *Violations of 15 U.S.C. § 1681i and NY FCRA § 380-f by Equifax*

39.     Despite Plaintiff's September 27, 2019 dispute letter to Equifax, Equifax continued to report, and likely is still reporting, personal information, account data, and inquiries that are not attributable to Plaintiff.

40.     Pursuant to § 1681i(a)(1), the FCRA requires a CRA to complete a reasonable reinvestigation of the accuracy of any item of information in a consumer's credit file that the consumer disputes to the CRA within 30 days of the dispute. § 1681i(a)(1).

41.     Pursuant to § 1681i(a)(5), a CRA must "promptly delete [disputed] information from the file of the consumer, or modify [disputed] information, as appropriate" after completing its § 1681i(a)(1) reinvestigation if the CRA finds that the disputed information is

"inaccurate or incomplete *or cannot be verified*." § 1681(a)(5) (emphasis added).

42.     Had Equifax reasonably investigated Plaintiff's dispute, it could not have verified any

item that Plaintiff disputed. Nevertheless, after Plaintiff's dispute, Equifax verified and

continued to report inaccurate information that Plaintiff disputed.  In so doing, Equifax

violated § 1681i (and § 380-f of the NY FCRA).

### *Violation of 15 U.S.C. § 1681b by Equifax*

43.     Pursuant to § 1681b, a CRA may not publish a consumer report about a consumer except

in specific circumstances.

44.     Upon information and belief, Equifax violated § 1681b by publishing consumer reports

about Plaintiff to third parties concerning credit transactions that did not involve Plaintiff.

### *Violation of § 1681g by Equifax*

45.     FCRA § 1681g requires CRAs to provide a consumer with all information in that

consumer's credit file upon the consumer's request.

46.     Equifax violated § 1681g by failing to provide Plaintiff with a copy of her credit file upon

her request.

### *Damages*

47.     At all times pertinent hereto, the conduct of Equifax and CoreLogic, as well as their

respective agents, servants and/or employees, was malicious, intentional, willful,

reckless, negligent and in wanton disregard for the rights of Plaintiff under applicable

law.

48.     As a direct and proximate result of the willful and negligent actions, conduct, and

omissions of Equifax and CoreLogic, Plaintiff suffered cognizable actual damages,

including but not limited to (a) not yet known credit and other pecuniary harm,[8] (b)

damage to Plaintiff's reputation for creditworthiness, and (c) emotional distress, anxiety,

frustration, humiliation, and embarrassment.[9]

49.     Moreover, because Equifax may have reported Plaintiff's personal information on

consumer reports about one or more other consumers, Plaintiff was likely also damaged

because, in disclosing Plaintiff's information to other consumers and/or creditors who

inquired about other consumers, Equifax violated Plaintiff's privacy rights.

**FIRST CAUSE OF ACTION**
**Violations of §§ 1681e(b), 1681i, 1681b, and 1681g**
**of the Fair Credit Reporting Act against Equifax and/or CoreLogic**

50.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at

length herein.

51.     Equifax and CoreLogic violated 15 U.S.C. § 1681e(b) by their respective conduct, acts,

and omissions in failing to maintain and/or follow reasonable procedures to assure

maximum possible accuracy of information concerning Plaintiff in the preparation and

publication of consumer reports about Plaintiff.

52.     Equifax also violated multiple sections of 15 U.S.C. § 1681i by its acts and omissions,

including, but not limited to, the following:

    a.  failing to (i) conduct a reasonable reinvestigation of Plaintiff's dispute concerning

        all items of information that Plaintiff disputed, and (ii) record the correct status of

        the disputed information or delete the disputed information from Plaintiff's credit

---

[8] Upon information and belief, details concerning pecuniary damages caused by Defendants may be revealed through party and third-party discovery.

[9] Upon information and belief, Equifax and CoreLogic published inaccurate and derogatory consumer reports about Plaintiff to third parties.

file in violation of § 1681i(a)(1);

    b.  failing to review and consider all relevant information submitted by Plaintiff concerning Plaintiff's dispute, in violation of § 1681i(a)(4); and

    c.  failing to properly delete items of disputed information from Plaintiff's credit file that Equifax could not have verified upon a lawful reinvestigation in violation of § 1681i(a)(5).

53.    In addition, Equifax violated § 1681b by publishing consumer reports about Plaintiff to third parties concerning credit transactions that did not involve Plaintiff.

54.    Equifax also violated § 1681g by failing to provide Plaintiff with a copy of her credit file upon her request.

55.    Defendants' respective FCRA violations were willful, rendering each Defendant liable for statutory damages, actual damages, costs and reasonable attorney's fees, and punitive damages in an amount to be determined by the Court pursuant to § 1681n.

56.    In the alternative, Defendants' respective FCRA violations were negligent, entitling Plaintiff to recover actual damages, costs, and reasonable attorney's fees pursuant to § 1681o.

## SECOND CAUSE OF ACTION
### Violations of NY FCRA §§ 380-j and 380-f
### against Equifax and/or CoreLogic

57.    Plaintiff realleges and incorporates the above paragraphs as if reasserted and realleged herein.

58.    Equifax and CoreLogic violated multiple sections of the NY FCRA (NY GBL §§ 380-380-u) by their respective acts and omissions.

59.    Equifax and CoreLogic each violated the NY FCRA by:

a.  maintaining in Plaintiff's credit file and/or reporting information about Plaintiff that Equifax had reason to know was inaccurate, in violation of § 380-j(a);

b.  failing to maintain reasonable procedures to assure maximum possible accuracy of information Equifax reported about Plaintiff, in violation of § 380-j(e).

60.  Equifax also violated the NY FCRA by failing to promptly and properly reinvestigate Plaintiff's dispute concerning each item of information that Plaintiff disputed to determine whether the disputed information was inaccurate and record the correct status of the disputed information in violation of § 380-f(a).

61.  These violations of the NY FCRA were willful, making each Defendant liable to Plaintiff for actual damages, costs and reasonable attorney's fees, and punitive damages in an amount to be determined by the Court pursuant to § 380-l.

62.  In the alternative, Defendants' respective NY FCRA violations were negligent, entitling Plaintiff to recover from each Defendant actual damages, costs, and reasonable attorney's fees pursuant to § 380-m.

63.  Plaintiff is also entitled to injunctive relief restraining Equifax and CoreLogic from any further violations of Plaintiff's rights pursuant to the NY FCRA.

**WHEREFORE**, Plaintiff seeks judgment in Plaintiff's favor and damages and equitable relief against Defendants:

1.  Awarding against each Defendant actual damages, statutory damages, punitive damages, costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1681n and § 1681o as well as NY GBL § 380-l and § 380-m;

2.  Ordering Defendants:

a.  immediately and permanently (i) delete all inaccurate information from Plaintiff's

credit reports and files, and (ii) cease reporting the inaccurate information to any and all persons and entities to whom Equifax reported consumer credit information; and

    b.  send updated and corrected credit report information to all persons and entities to whom Equifax reported inaccurate information about Plaintiff within the last three years;

3.    Enjoining Equifax from violating Plaintiff's NY FCRA rights; and

4.    Such other and further relief as may be necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury as to all issues so triable.

*/s/  Adam G. Singer*
**LAW OFFICE OF ADAM G. SINGER, PLLC**
Adam G. Singer (AS7294)
asinger@adamsingerlaw.com
Brett D. Sherman (BS4917)
brett.sherman@adamsingerlaw.com
One Grand Central Place
60 E. 42nd Street, Suite 4600
New York, NY 10165
T: 212.842.2428